Good morning, Your Honors. May it please the Court, Daniel Fears on behalf of American Medical Response of Southern California. Your Honors, today we are here respectfully challenging the District Court's approval or confirmation of an arbitration order in which the arbitrator created or overstepped his authority in creating an issue that was not properly before him, and then secondly rendered a decision that did not draw its essence from the collective bargaining agreement. And I'd like to take those two primary issues in that particular order. First, with respect, let me ask a question about the overall context. There's a federal policy favoring arbitration of labor disputes, correct? There is, Your Honor. And the test in terms of the power of the arbitrator or the ability of the arbitrator is, if the arbitrator is interpreting the collective bargaining agreement, if he or she comes up with any plausible interpretation of the contract, can we confirm the award is actually part of the test as well? Yes, if it's a plausible interpretation of the issue that is properly before the arbitrator. And we determine, again, just the general context. Do we determine what's properly – how do we determine what's properly before the arbitrator when the parties have submitted different statements of what's before the arbitrator and the arbitrator has come up with his own statement of the issue he needs to answer? Well, then, in circumstances in which the parties do not agree, and in this particular case where the contract under Section 18.02 provides that the parties, both the employer and the union, must submit the issue to the arbitrator, if there is not agreement on the issue. For instance, in a case such as whether there was just cause to terminate an employee under a collective bargaining agreement. But where there is not agreement on the issue, then the – and if the parties do not agree that the arbitrator may form the issue him or herself, then the arbitrator cannot create his or her own issue and decide that issue, especially when the issue in this case came from the National Labor Relations Board under a deferral which was agreed upon under very specific terms. I'm not quite – What's the status of what's happening at the NLRB now? Tell us. Mr. Talbot may be able to better speak to that. It's my understanding that this union is no longer representing these individuals. This particular station has closed. The employees have transferred to two other stations where there's – You say so the North Hollywood station is closed? That is correct, Your Honor. And these employees are now, I believe, are members of the IAEP union working out of two other stations. And NMSA is not their bargaining unit representative. That's my understanding, Your Honor. And I believe the NLRB proceeding, which I am not counsel of record on, I believe Mr. Talbot may be, is either resolved or resolving, but it's under the assumption that NMSA is not the representative of those bargaining unit employees. They are actually, and ironically, represented by IAEP, which is the other union affected by a decision like this where the arbitrator basically decides that there's a geographical jurisdiction of work, which is nowhere found in the collective bargaining agreement, and taking it away. Is that the union that represents the non-Hollywood people? That's correct. Has there been, to your knowledge, and we'll ask the other side this, decertification of NMSA? There was a petition filed at one time, but as far as I know, there wasn't an actual decertification. I think that became moot by virtue of the closure of North Hollywood for completely other reasons and a spreading out of the employees to other stations. That's my understanding. Back to my point regarding the issue of arbitrability. Under Section 18.02, which is in the record at page 51, it specifically provides that the parties must agree upon the issues or it has to be found in the collective bargaining agreement the issues. I'm not quite sure I understand what you're saying. Do I hear you saying that if the parties don't agree on the issues, there can be no arbitration? That's correct, unless the parties agree to confer upon the arbitrator, as they do in some cases, they give the authority to the arbitrator to decide what the issue is. Then they have agreed upon that. Otherwise, if there is no agreement on the issue, then it cannot and should not go forward. Now, in this case, the issue came from the NLRB very specifically, and the record shows at page 134 of the record, there was an unfair labor practice charge that was filed in which the union claimed that in the last six months, the company had made a unilateral change in violation of Section 8A.5, which is a provision that provides allegedly for unlawful conduct, not conduct in violation of a contract. That's a separate issue. But the union was claiming it was unlawful conduct, and that's in the charge that was filed. Ultimately, the company, at record 134, agreed with the NLRB to arbitrate the allegations in the amended charge, notwithstanding any contractual time limits. So the company agreed to arbitrate the allegation of unlawful conduct, and that meant that they would go back for at least six months regarding that unlawful conduct, because the law, under an unfair labor practice charge, it's a six-month limitation period. Now, from that point, then the Board sent out a deferral letter, which the union has cited to, and that's in the record at pages 122, 123. And there's four provisions that are cited to by the union there with respect to what the issue was. And the very first one says the charge alleges, so it's referring to the unfair labor practice charge. Kennedy. Employer unlawfully subcontracted a bargaining unit working on a bargaining unit employee. Yes. And that's an unlawful, the distinction there being it's alleging unlawful conduct as opposed to a breach of a collective bargaining agreement, and goes on to say that the company is willing to process the allegations regarding the above allegations, that is, the unlawful conduct that allegedly occurred, irrespective of any limitations period. And so, therefore, the company, as a result of its agreement with the NLRB, and then the deferral letter, is agreeing to go to arbitration regarding these unlawful allegations, and as to those allegations, willing to go back six months because they would be required to do so before the National Labor Relations Board, the six month period of time, but they did not waive any limitations period regarding a separate alleged breach of the collective bargaining agreement that the union was making by virtue of its April 2009 grievance. That is a separate matter. That is not unlawful conduct. At most, that is an alleged breach of a collective bargaining agreement, and all of the defenses would apply. Unfortunately, at the arbitration, because there wasn't agreement on the issue, the arbitrator ultimately decided an issue and kind of conflated those two. It basically took the ULP deferral and the company's agreement to arbitrate that and then said, essentially, you have waived all defenses to the breach of contract, the collective bargaining agreement grievance, which it never did, and specifically found a waiver of the limitations period, the 15-day limitations period, any defense, which is something the company vehemently opposed, both at the arbitration, pages 160 to 163 in the record, as well as in its brief. And while it was willing to arbitrate the ULP going back six months, it was not willing to waive all defenses to a separate contractual violation. And that's what the arbitrator, in coming up with the issues that, in violation of section 18.02, is looking to a Collier deferral letter, an NLRB letter, to come up with whether or not, or make a decision as to whether or not the company somehow waived its defenses to an alleged contractual violation. Did you have a question, Your Honor? I was going to ask, was the arbitrator's formulation of the question that was before him known to the parties during the course of the arbitration as opposed to at the end when he issued his statement? It was not. There's nothing in the record reflecting that. And as I mentioned a moment ago, at the record 160 to 163, the employer made it very clear as to what it viewed the issue as, and the employer never agreed to submit to the arbitrator the right or ability to decide whatever issue it wanted to. Well, I'm slightly confused. NEMSA, in its brief description of the grievance, identifies Section 403. This is ER 106. So it seems that that's what the whole thing starts as, is the grievance involving 403. Then I'm looking at ER 134 that says, yes, the employer is willing to arbitrate the allegations of the amended charge for Case 31, notwithstanding any contractual time limits on the filing and processing of a grievance to arbitration. Scott Roenkamp. What does that mean? That means there was a separate collective bargaining agreement grievance that was filed in April of 2009. Then the union filed a separate July of 2009 amended charge, which Roenkamp, who is a lawyer, has never said that it will waive the limitations as to the legal violation, the violation of law, the 8A1 and 8A5, and is willing to arbitrate that issue and waive the limitations as to that issue, the unlawful conduct. He did not say, and has never said, and the company has never said that it would waive any limitations issues as to a separate breach of contract or grievance arbitration issue. And so that's where they got conflated, unfortunately. That's where the arbitrator conflated them. And, in fact, the district court judge in footnote 2 conflated them by saying they're basically the same issue and they're not. The district court judge omitted the fact that the unfair labor practice violation involves an unlawful unilateral action in the last six months, whereas the collective bargaining agreement does not speak to that. That's a contractual matter in which the question is whether or not in the last 15 days the company has violated a collective bargaining agreement and all of the defenses apply. So they're two different issues, and that's why it was set up certainly at the arbitration. Now, unfortunately, we're talking a labor arbitration. We don't have complaint, answer, motions, et cetera. You come to an arbitration and you state your position. The employer's position was stated at 160 to 163 and briefed and reserved, and the arbitrator went outside the scope of his authority in creating an issue outside of 1802 to create an issue that conflated the collier deferral issue along with the contractual violation, that is, the April 2009 alleged violation of the collective bargaining agreement. The unfair labor practice was against, was involved failing to provide the union with names and information that was requested prior to our level one and level two meeting as per my request in writing in the grievance notice. That aspect was withdrawn, Your Honor, and there was an amended charge that limited only to within the last six months the company unilaterally changed a practice. Now, the importance of that is the employer, of course, knew that within the last six months it did not make any change. It's undisputed that at least since September of 2007 it was spreading the work among the three unions at Nokia, at Dodger Stadium, and at Staples, and so it knew that there was no violation of the act and was willing to arbitrate that issue. At the same time, under the collective bargaining agreement, it also knew that the union had not brought this charge in a timely manner. There's a 15-day period, and they would never waive that. But unfortunately, the arbitrator in coming up with his issue, again, as I don't want to sound like a broken record, conflated those two points. Let me ask a narrower question. The arbitrator's determination that the last phrase of the second paragraph on 4.03, that is, will be filled at the employer's discretion, his determination that that referred to seniority issues, right, and not distribution between Hollywood and others, that's certainly one plausible interpretation of the CBA, is it not? It is not. Especially given that the negotiations between the parties at around that time, according to the record, involved seniority issues. It is not a plausible interpretation. And this gets to that second issue, Your Honor. First of all, as a preliminary, this is the first and only contract between these parties. So we're looking at the one document that sets forth their understanding of the terms. Secondly, you have to look at the plain meaning of the language. And that's, under rule of construction, that's the first thing you look at, and where you have language that says if an employee desires a special event, to work on a special event, the employer will consider at its discretion. That is very clear, that the employer has discretion in deciding who it will select under any circumstances. But his interpretation was that that phrase said employer's discretion meant the employer didn't have to use the seniority rules, which it normally would rule. Isn't that right? Well, he assumed two things. He assumed, and this is the bigger assumption he made, he assumed that there was something in the contract that gave this union the right geographically, jurisdictionally, to the work in, I assume, L.A. County. He's assuming that, and there's not anything in the contract that says that. This is an emergency response company, and they don't draw lines like that. Otherwise, you can imagine the chaos if there were geographical lines where one ambulance or group couldn't go over another line. That means patients suffer. And this company has never agreed in any contract, this one or any other, to a geographical line like that. So the first assumption the arbitrator is making is that there's some contractual right to this work in the first place, and there's nothing in the contract. There's he has to draw his award from the essence of the contract. There's nothing in the contract that says they have a right to that. I don't mean to cut you off. Over time, you're answering the question at great length. If you can answer it in a slightly abbreviated fashion, that would be helpful. Okay. Very good. Secondly, to your point about seniority, there's nothing in the language, the plain meaning of the language, that refers to seniority. He could weave in anything, and simply because that may be the mental state of the union, there was not any evidence whatsoever that that was articulated as the reason. In fact, the record reflects that there was nothing said across the table that that was meant to suggest that the employer could ignore seniority but had to give the work to that particular bargaining unit. There's nothing in the record to suggest that. I might have the impression that before this 403 section was drafted that we're talking about that first the options went to the North Hollywood people. Your Honor, there was not a contract between NEMSA and this company on that. But secondly, two of the three special event forums did not even exist before that. I know that, too. Okay. Then the third thing is the evidence was the only one that did exist was Dodger Stadium, and that there were employees from the other units that worked there as well, and there was never any agreement that anyone had a contractual geographical right to that work. They had people working side by side. That's what's in the record. And what this arbitrator did is, from the fact that people worked there and that this union grieved it, he gave them, over the rights of union employees at two other units, he gave them a geographical preference over this job, and there's nothing in the contract that provides for that. Okay. Why don't we hear from the other side? We've taken you over, but we will give you a chance to respond. Thank you very much, Your Honor. Timothy K. Talbot for the National EMS Association. Let me start by bringing you up to date as to the current status of the NLRB matter. The court took judicial notice of a consolidated complaint that was filed against American Medical Response for the North Hollywood employees arising out of the North Hollywood unit. That matter is still pending. The matter had been scheduled for trial before the board on a couple of occasions, but then the parties moved into a settlement discussions, and those discussions have not resulted in a resolution at this point. The relevance of that charge is that it does, in fact, allege, as far as the NLRB is concerned, that NEMSA is still the representative of those North Hollywood employees. That is principally because, under board doctrine, their relocation to another workplace, if you will, does not destroy the bargaining unit in and of itself, particularly since those employees are still performing work in that North Hollywood geographical region that AMR chooses to deny exists. There has been no decertification election, and AMR did, in fact, withdraw recognition. However, that is part of the charge because NEMSA has alleged that was done unlawfully and improperly, so that is bound up in those particular charges that the board is resolving. So at the present state, NEMSA, as far as we're concerned, is still the representative there. There's no successor representative taking care of those employees. Has the trial been rescheduled? It's been held in abeyance at this point while the parties are discussing resolutions. I think the issue here is that AMR had a fundamental misunderstanding of the practice here. While it is true an unfair labor practice charge alleges a violation of federal law, a grievance alleges only a violation of a contract. The NLRB, in its deferral determination, asks the question, does the contract contain provisions that arguably overlap with the unfair labor practice? Is there final and binding arbitration in their contract? And is there a possibility that the resolution of the dispute might also render either one or resolution or two moot the NLRB's federal charge? The deferral letter plainly states, and the deferral letter was issued to Mr. Rohkamp after the e-mail that are in the record, what the terms of the deferral letter at ER-122? Yes. All right. And the four elements of the deferral letter were communicated to the parties, and I would note this was done approximately 10 months prior to the arbitration hearing at issue here. But the board identifies that on point number 1 on ER-123, the employer unlawfully subcontracted out bargaining unit work to non-bargaining unit employees. That's what the charge alleges. If you go to 4, it says, since the above allegations in the charge appear to be covered by certain provisions of the collective bargaining agreement. Well, the agreement itself doesn't allege or contain provisions of federal law. So there have to be underlying provisions of the contract that give rise to the dispute. And that's exactly what the grievance process is intended to resolve. The union in this instance has to file a grievance because the arbitrator has jurisdiction over grievances. The grievance is in the record. The grievance was filed prior to the unfair labor practice charge. The deferral letter makes clear that a grievance must be presented, and that's ultimately what's resolved. I would like to address counsel's point with regard to the scope of the issues, section 18.02 of the collective bargaining agreement. This is ER-51. The literal phrasing of the scope of the arbitrator's authority, it says, the arbitrator's authority shall be limited to resolution of the particular issues submitted to the arbitrator by the union and the employer. It doesn't say the issues stipulated, otherwise agreed to by the parties. It's the ones that are submitted. It is not the case that an arbitration stops moving forward simply because the parties are unable to agree on the particular nuances of an issue. That's why, and if you look at the submissions of the parties in their post-hearing briefs, each side, including the employer, framed the issues as they perceived them. Both sides articulated those issues verbally on the record that the arbitration had the ability to hear the other side's position. And the arbitrator, as he notes in his decision, listened to all the arguments, all the evidence, and then framed the issues in light of the NLRB's deferral. Let me track something else through. Sure. I'm looking at ER-133. It says, 31-CA-29266, Scannell, Michelle, sent Monday, July 27, to Scott Rohenkamp. Please see the attached amended charge. The amendment has made it eligible for deferral to the grievance and arbitration procedures. Please contact your client to determine whether they would agree to waive any time limits, et cetera, et cetera. And then you have the next one, which is ER-134, that says, yes, the employer is willing to arbitrate the allegations in the amended charge. That's the amended charge that's referred to on the earlier. Exactly where on the record is the amended charge to which they agreed? I have the deferral letter, but the deferral letter is dated August 4, 2009. Right. I have it. Which is after all this talk about an amended charge and agreeing to it. The amended charge appears on ER-121. On 121. If I may, with respect to the charges. And that's the one that's referred to then in that correspondence on 121. Correct. Amended charge against the employer. Correct. In the employer's North Hollywood Glendale operation within the last six months, the above-named employer unlawfully subcontracted out bargaining unit work to non-bargaining unit members. And that's to which Rohenkamp agreed to that. Is that your argument? What he agreed to do was defer the processing of this charge to the filing of a grievance that would be presented to an arbitrator. That's what he agreed to. That's what the terms of the deferral are. We must file a grievance because the arbitrator only has authority to resolve grievances under the contract. He doesn't have independent authority to resolve unfair labor practice charges. That's why the board was. And the deferral letter says this alleged unfair labor practice, this charge, may be resolved in whole or in part by a grievance process. Correct. Correct. And let me move quickly then to another point about the opinion itself, the decision itself. As you all know, the standard is incredibly deferential to the arbitrator. The company makes the argument that the interpretation that the arbitrator rendered was not a plausible one with respect to the contract. And as I understand it, that is because they believe that the word or phrase employer discretion is unambiguous. But as the arbitrator noted, that phrase is in fact ambiguous, particularly in light of what each party has alleged. And he's not reaching. ER-28, which is section 2.01 of the contract, uses the same two words, employer's discretion, with regard to a shift fitting process. And the preceding line says, the most senior employee who bid shall be awarded the position. The next sentence, any remaining unfilled shift assignment openings will be filled at the employer's discretion. Certainly that doesn't mean we're going to give it to AMR employees anywhere in the country. It means the employees within the bargaining unit. You sit down and you negotiate for the employees who are covered by that unit. Everything in this contract is directed at those people. And significantly, at no point during this case at any time did the employer actually present any evidence that these other IAEP units had contractual language recognizing their right to perform special events work or that they independently made a claim to any of that right. So in light of the ambiguity that the arbitrator noted in that provision, utilizing traditional methods of resolving that ambiguity in contract negotiations looked to what the parties expressed during the bargaining process, what their intent was. And he rendered a meaning. And as this Court has noticed and noted in many cases, it is perfectly acceptable for an arbitrator to use notions of the industrial law, what they know about a particular industry, and to bring that to bear on a particular decision. So it's not outside his scope or his authority to do that. So given those standards, I think the District Court got it quite correct that the arbitrator made a plausible interpretation of the contract using the PAC concrete case from the Ninth Circuit, that he also had the authority to fashion an issue statement based upon all the matter that was submitted to him. And that's given the same deference, and he did that. They complained about the remedy. But the remedy is also within his realm, and both the submissions of the parties asked the arbitrator to fashion the remedy. So with all of those things, we believe that the case or the decision should be upheld. Any other questions? Thank you. Let's put a minute on the clock for response. With respect to the section counsel referred to, the shift bidding at ER-28, it proves my very point. That section does specifically provide that shifts will be awarded by seniority and then has further language. The section we're talking about, 4.03, says nothing of seniority, and it says at the employer's discretion, which is broad. Secondly, with respect to what was pointed out, here's the problem. At page 80 of the record, which is the arbitrator decision, there is, after the arbitrator recites those four points of the Collier deferral, the arbitrator out of nowhere says that the company somehow waived its defenses to the grievance by virtue of agreeing to arbitrate the unlawful allegation in the unfair labor practice charge. There's nothing in the contract or anywhere else where the employer waived its right to defend itself fully both on that limited April 2009 grievance just because it agreed to arbitrate the ULP, the unlawful conduct, when it deferred or agreed. And what's the unlawful contract? The unlawful, that's in the record 121 that counsel referred to, that's the unfair labor practice charge that was deferred, which says by 8A-5 that within the last six months you have made a unilateral change of terms and conditions of employment. That's unlawful under the National Labor Relations Act. And so we agreed to layer that on top of the arbitration process and allowed that allegation to go back for six months. It has nothing whatsoever to do with the contractual arbitration provision filed April 2009, which is a grievance where the employer has its full rights and remedies. So once again, both the arbitrator and the district court at footnote 2 misread that and conflated, they took a waived defense as to a unilateral unlawful act, alleged unlawful act for the charge. That defense waived for that illegal charge. They then transposed it or conflated it over or applied it to the contractual grievance, which is different, and thus that's what caused the arbitrator ultimately to have that language at ER 80 saying that the employer somehow waived its defenses and ultimately was the reason for the decision, because we could not defend ourselves saying, wait a minute, the contractual arbitration, they waited way too long, we've been doing this for since 2007, and they're suddenly filing a charge in April of 2009. That's contrary to the collective bargaining agreement provision, the grievance and arbitration provision, and so the arbitrator can't take and interpret a legal defense to a ULP and apply it to a contractual arbitration. I'm obviously lost because I'm not following you at all. You know, on July 30, after this question by Michelle Scannell, you say, yes, the employer was willing to arbitrate the allegations in the amended charge, notwithstanding anything else when you talk about agreements. The amended charge talks about unlawfully subcontracting out the bargaining unit work to non-bargaining unit members. The key there, though, is the language that's right above, which the district court missed, 121. It's under paragraph K, right above the typewritten language where it has two, where it says the above name employer is engaged in is engaging in unfair labor practice within the meaning of section A, 8A, section 1, and 5. And that is an allegation of unlawful conduct. And then paragraph 2 just describes the unlawful conduct. So the unlawful conduct is that we made a unilateral change within the last six months. But the waiver that the arbitrator finds on 80, ER 80, is only a waiver to filing the objections and the processing of the grievance. So he says, listen, that's in front of me, and let's go, which is what I, absolutely, what I understand in the referral letter. While there is a waiver to the grievance of the alleged unlawful conduct, the 121, there was no waiver of the grievance of a contractual, alleged contractual violation. I disagree. Okay. Thank you very much. American Medical Response to Southern California versus National Emergency Medical Services Association is now submitted for decision. One last case on our argument calendar, Erringer versus Principality Monaco. Thank you.
judges: Stein, Trott, Fletcher